You may proceed when you're ready. Good morning, Your Honor. If I could just get set up here briefly. Good morning. May it please the Court, Matt Frank on behalf of Plaintiff Roy Warmbold. If I might, I'd like to reserve approximately four minutes for rebuttal, Your Honor. Summary judgment was improper in this case because there is a genuine issue of material fact regarding the factors that played a role in Mr. Warmbold's termination. Under the Minnesota Whistleblower Act, a plaintiff need not show but for causation. A plaintiff need not show animus. All that a plaintiff need show on the element of causation is that his protected activity was a motivating factor in his termination. It doesn't need to be the factor. It need only be a factor. But you've got to show the call more likely than not motivated the decision, right? By the LaPont, Minnesota Supreme Court case in 17 and McGrath or McGraw or whatever it is in 93. That is correct, Your Honor. That's on the ultimate issue, right? On the ultimate issue of causation, you have to show that it was a motivating factor. And to be a motivator... But more likely than not motivated. Correct. So the burden of proof is that it more likely than not was a motivating factor. The typical jury instruction that is in the civ jigs for the state of Minnesota says more likely than not played a role or more likely than not played a part. That's correct, Your Honor. The principal question for this court is this. Could a reasonable juror conclude that Mr. Wormbold's 911 call played a role in his termination? Because the answer is yes, the court must reverse. As set forth in our briefs, there are several facts that support this conclusion. But I'd like to begin by focusing on one particular fact which I believe is the most important fact and has ramifications for some of the others. That fact is Director Debbie Hoppe's mendacity. Mr. Wormbold, you will recall, worked at a Job Corps Center in Minnesota, which is a federal campus that is for troubled youth and attempts to help them work their way into the job force. Many of these campuses are run by private companies like the Defendant Mine Act. Director Debbie Hoppe was the director of the entire campus. On October 16th of 2015, Mr. Wormbold called 911 to report a potential active shooter situation on campus. Several hours later that day, Director Hoppe decided that she was going to remove him from service, suspend him without pay, investigate him, and then ultimately, less than three weeks later, terminate Mr. Wormbold's employment. One of the bases for her doing so was the allegation that Mr. Wormbold had refused her instruction to go help with the potential active shooter situation. This is really important that the court understand that plaintiff's argument on this point is not simply that Director Hoppe was wrong, that she got it wrong, that she just didn't understand what was going on. The basis for her allegation, she said, was that Mr. Wormbold came into a stairwell as the potential active shooter incident was going on, and she saw him, and she said, Mr. Wormbold, you are one of our security officers. Please come help me with this situation. And he looked at her, and he said, I'm sorry, Director Hoppe. I don't want to go anywhere near a gun. This is Director Hoppe's, one of her key bases for suspending Mr. Wormbold. One of three, in your opinion? Ultimately one of three, Your Honor. Yeah, proceed. Initially it was one of two. Yeah, one of three tops. Go ahead. Correct. The problem with this allegation is that it is a complete and total fabrication. Okay, so assume that the question was, does it matter that there were two other independent grounds? It does not, Your Honor. And the reason it does not matter is because what this shows is that Director Hoppe was cooking up reasons to get rid of Mr. Wormbold, and that is strong evidence of mendacity and that she's fabricating reasons to get rid of him, and a reasonable juror could infer from that that it's evidence of retaliatory motive. The reason that Director Hoppe is making things up in order to get rid of Mr. Wormbold is because the truth wouldn't actually allow her to do so. So your theory of the case is that she didn't want the police to be notified of the gun? As a general proposition, Your Honor, I don't think that's our theory of the case. Then what's your theory as to why she's upset that he notified the police? As we argue in our briefs, Your Honor, the Mine Act, the company that was managing the campus, was in jeopardy of losing its contract to do so. It did, in fact, lose its contract to do so a few months after this incident, and Director Hoppe, in her deposition testimony, blamed the active shooter incident as being one of the key reasons why it lost the contract. So when the active shooter incident happened, initially Director Hoppe wanted to make sure that everybody was okay and calm everybody down. But as the day wore on, she was inundated with concerns and complaints from parents and families of the students and concerns and complaints from the surrounding neighborhood, which had had a history of problems relating with the school. I don't know where you're going, if this is going to answer my question or not, but the question was, I thought the claim here was that she retaliated against him for calling the police. That's what the statute is about. You can't retaliate against somebody for reporting a violation, and the report that he made was calling the police. And I asked whether your theory was she was upset with him for calling the police. You said no, so I don't understand then what the theory is of the case. Perhaps I misspoke, Your Honor. We believe our theory of the case is that she was retaliating against Mr. Warmbould because he was the person who called 911. And if you look at the evidence, that seems to be the case. So your theory is she wasn't opposed to somebody calling the police, she just didn't want him calling the police? I don't understand. I want to sort of make a distinction, Your Honor, between having a general rule that says we don't want people to call the police in situations like this and what happened after the fact, which is that Director Hoppe was attempting to do crisis management. They needed a scapegoat to blame the active shooter incident on, and they found that scapegoat in Mr. Warmbould. Well, that might be... He could be a scapegoat without it being related to him calling the police. That is true, Your Honor. But if you look at the rest of the record, the totality of the record, it suggests that that is why.  The fact that he was the person who called 911, Your Honor. I mean, somebody else wanted to call the police, and that person wasn't disciplined, as I understand it. And I thought she praised the... Am I remembering correctly that she praised the response in the immediate aftermath? Didn't, of course, register any unhappiness with the police being there. Two points, a couple of... I think there were multiple points there, Your Honor. One is, nobody else called the police. When looking at whether or not Mr. Warmbould is similarly... So, a couple of things. I apologize. Give me one moment. Well, I threw several things at you, but my concern is that if she wasn't opposed to the police being contacted, I'm having trouble following how your theory holds together that there was retaliation for him calling the police. Unless it was that she wanted somebody else to have called the police. I'm just not following the theory. Go ahead, and maybe you can explain it. Thank you, Your Honor. Our theory of the case is not... As is true in many whistleblower cases and retaliation cases, you have a situation where somebody has done something which, on the surface, looks like a good thing. They've opposed illegal conduct. They've opposed discrimination or harassment. And very often, most often, employers will have policies in their handbooks that say, do these types of things. Call 911 in these sorts of situations, right? The problem is that here, as a result of Mr. Warmbould calling 911, the center, the Job Corps Center... So your theory of the case is she didn't want the police to know about this shooting or this gun? Is that your theory of the case? Our theory of the case is that they decided that they needed a scapegoat to blame this on in order to keep their contract. I think we're back to what the district court says. It's a nonsensical theory that you're pursuing because you're saying that he's being retaliated for calling the police, but there's no evidence that she didn't want the police to know about it. She's just unhappy after the fact that they lost the contract. Your Honor, I see that I'm running low on time. I'll reserve the rest of my time on rebuttal. Maybe it would be a good idea to answer the question if you have an answer. I believe... I apologize, Your Honor. Do you want to respond to the district court's concern that the theory is nonsensical? Yes, Your Honor. I'm going to do it now rather than trying to reserve it for rebuttal because we don't like new issues raised on rebuttal. So... Do you want to respond? Do it now. Thank you, Your Honor. The issue that Your Honor is raising in relation to the district court is that there's this common sense intuition that nobody would want to fire somebody who's just called 911. That makes sense until you understand that the decision was made after the fact, not before, in order to manage a crisis and in order to save the contract. And when you look at the totality of the evidence, what you see is Director Hoppe fabricated reasons to get rid of Mr. Wormbold. Director Hoppe treated him differently than everybody else who did not call 911 and didn't go after people who engaged in... who were part of a supposedly negligent search. In other words, would it be fair to say that this was a face-saving gesture on Hobbs' part to protect herself and everyone else other than Mr. McClain? That's correct, Your Honor. Very well. You will have time for rebuttal now. Mr. Goldsmith, is it? Yes, that's correct. Good morning. You may proceed. Good morning. Thank you very much. My name is Neal Goldsmith. I'm here on behalf of the Appali Mine Act, incorporated along with my co-counsel, excuse me, Megan Anderson. I'm here to please the court.   who was a member of the Appali Mine Act, was a member of the Appali Mine Act that he was terminated because he called 911 to report a student with a gun on the center's campus. This illogical theory defies all reasonable notions of common sense, and most importantly, it is completely unsupported by the record evidence in this case. Mr. Frank just spent a large part of his time talking about this theory and also the reasons for Mr. Warmbolt's termination, claiming that they were somehow fabricated. What he didn't provide to you or hasn't provided to you yet is the evidence that he actually needs to present to defeat summary judgment in this case. And that's evidence showing that the Mine Act harbored any animus whatsoever against Mr. Warmbolt because he called 911. Wait, wait, animus is not required by the Minnesota statute. If you read it, it's very plain and it's pretty broad. So, your honor... It just says, if the employee is in good faith, it doesn't talk about your animus, it talks about theirs. If the employee in good faith reports a violation of any federal or state law to anybody who ever existed in the government, it says that, right? Then you can't retaliate against them. So, where do you get this animus idea? So, that's correct, your honor, and perhaps I maybe misstated the standard here as you talked about with Mr. Frank. I was going towards the causation piece here of what he has to show in order to prove his case that the 911 call more likely than not motivated the discharge decision. And that's the animus. Do you think the statute requires also a retaliatory motive? It does, it does, your honor. Okay. What's your Minnesota Supreme Court case that says that? So, the retaliatory motive is part of the McDonnell-Douglas standard. No, no, wait, wait, this is state law, my friend. So, before we get too far afield, tell me where Minnesota Supreme Court talks about Judge Colleton's expressing better than I can where I think the key is. Usually in these it says on account of or some such words that imply a motive. And the bare naked language here doesn't. That's correct, your honor. However, in terms of looking at the causation of this issue, I think Minnesota cases have been clear as well as the district court here that there has to be a retaliatory motive or an impermissible reason for the discharge here. And all I'm asking for is authority for that. What's your best authority about a retaliatory motive as opposed to just it kind of happened? So, the... I'm sorry, I can't give you a case. Doesn't it say because in the statute an employer shall not discipline anybody because the employee reports a situation? Isn't because a but for requirement? So, I think that's the causation question that's coming up here. And I think the Minnesota Supreme Court has said that the causation standard is whether the protected activity more than likely than not motivated the discharge decision. And that's the issue that's partially before the court that Mr. Frank contends was wrongly decided on summary judgment below. So, if I could, I'd like to address the 911 call and all the evidence related to the 911 issue. And this is all undisputed evidence in the record. There are numerous Mine Act policies and guidelines that clearly state employees should call 911 to report any dangerous situations. Mr. Warmbould, as a security officer, was the responsible reporting source for safety issues and had a duty himself to call 911. That's in his job description. Mr. Warmbould had called 911 on three previous occasions and was never disciplined or faced any adverse consequences for doing so. In fact, there's no evidence that any employees who called 911 at Mine Act have ever been disciplined or faced any adverse consequences for doing so. Now, during the incident when Ms. Hoppe, the alleged bad actor in this case, when she was first informed that there was a student with a gun on center, the first thing she said was, have the police been called? It's clear that she wanted the police to be called that day. Moreover, two separate employees on two separate occasions instructed Mr. Warmbould to call 911 during the incident. That was Mr. Ammons and Mr. Otoloye. They both instructed him to call 911. During the assembly, as this panel pointed out, Ms. Hoppe, in fact, thanked the security personnel for doing what they were supposed to do that day after the incident took place and calling the police and making sure they got there so quickly. All of this undisputed evidence derails Mr. Warmbould's theory. So let's talk about this theory. The district court called it a far-fetched theory, and I believe that's correct, and that's why this court should affirm summary judgment. So Mr. Warmbould paints Ms. Hoppe here as the villain who was looking for someone to blame for this gun incident. Not only is that theory not supported by the evidence, again, it defies logic and common sense. You said for the incident. Well, he's kind of to blame for the incident for sure, right? That was the reason you fired him. Right, because the search... You didn't find the gun at first. Exactly. The reason he was fired was obviously not for the 911 call. Maybe I didn't understand your last sentence there. So she was looking for someone to blame for the gun incident. And their theory is that she was looking for someone to blame and she found the scapegoat in Mr. Warmbould. Now, even if that's true, even if she was looking for someone to blame, I think, as you pointed out, that was the correct person, one of the correct, maybe one of or the correct person to blame is because he was involved in that negligent search the night before involving the marijuana smell in the student's room that could have and should have caught the gun. Why was that negligent? He had no cause to search for a gun. So he was reported to him by an RA, two separate RAs, I believe, that a student appeared high and they smelled marijuana in the room. Mr. Warmbould goes up to the room. He smells smoke. I know what happened. I just don't understand why you say there was a report of marijuana smell, therefore he should have found a gun. Are you just saying he should have stumbled upon the gun when looking for marijuana? So he admitted in his deposition that that likely would have, in fact, happened. Those are Mr. Warmbould's words himself. He was asked if he should have done it. You make it sound like he had reason to think this student had a gun. No, I'm not suggesting that. He knew that, the search before. However, what happened was he should have done a targeted search. He admitted he did. For marijuana? That's correct. He should have done a targeted search for marijuana, which was contraband, and under the policies. Hoppe is upset with him because he didn't do a search for marijuana and stumble upon the gun. Yes, and she learned of all of that after the 911 call, and that's very important to remember in this case, the timing and sequence of events. Ms. Hoppe didn't learn about the facts related to this negligent search the night before that Mr. Warmbould engaged in until after the police were called. What happened was she realized that the police said that there was a spent bullet or one of the bullets missing from the chamber of the gun, so she immediately thinks, we need to find out if that bullet was spent on campus. Mr. Warmbould, can you go see if there was a bullet hole or somewhere in the room? So he goes there. He reports back to her. Yes, I found a bullet hole. However, it didn't penetrate the door. It didn't go all the way through. And then she thinks, well, weren't you involved in this search the night before? He says, yes. She says, what happened? And he explains to her, well, we just did a general visual search. We didn't pat down the student. We didn't do a targeted search. And, in fact, I looked under the bed to see if they could find the contraband. Ms. Hoppe then the next day or two days later wants to go back and see the scene for herself. She observes that, in fact, that the bullet hole had actually gone all the way through the door, contrary to what Mr. Warmbould had reported, and that there were dressers under the bed. So there was no way he could have searched under the bed. And these are the main reasons why Ms. Ely ended up deciding to terminate Mr. Warmbould. And that's something that Mr. Frank didn't mention, is that Ms. Hoppe was not the decision-maker in this case. But you agree that Hoppe's recommendation certainly played a role in the decision, right? It played a role because she was the one that had the facts and she was reporting them to Ms. Ely. However, if you look very closely at the record evidence, you'll see that this was by no means a rubber stamp. This is not trying to sanitize the decision by going above Ms. Hoppe. What happened here was an independent, objective, thorough investigation by Ms. Ely, where she at first, upon reviewing all the evidence and gathering all the statements, she even says, well, I'm not sure if there's enough here to justify termination. And so she takes it upon herself to go back, understand more thoroughly about Search 1, what went into that, why it was such a negligent search, why it was problematic. What about the stairwell conversation? You left that out. I thought that was listed in every document as one of the reasons, but you skipped over that entirely. Is that because you're concerned that there's a factual dispute about that? No, I'm not concerned about that, Your Honor. I think the district court was right in terms of it may be a fact dispute, but it's not material to this case. And that's because there were two other reasons proffered. And Ms. Ely herself even stated in her deposition that that stairwell incident, she gave a little weight to that when determining whether or not to terminate Mr. Warmbull. I'd also point out the- Did she say that he would have been terminated regardless of the stairwell incident? I don't believe she stated those exact words in her deposition. Is that necessary? It's not necessary, Your Honor, and that's because of the A Circuit's jurisprudence on the honest belief rule, and that's what we've cited in our belief that as long as the employer has a good faith honest belief for the reasons for termination- So you're saying Ely believed that happened even if Hoppe were lying about it under the light most favorable to the plaintiff? I'm sorry. I'm not sure I'm following your question. I don't need you to answer. I think I understand the argument. Well, rationalization has been defined as the giving of good reasons for the real ones. Shouldn't the jury decide what the real reason was here? If there was evidence here, any evidence, that the 911 call played, more likely than not, played a role in Mr. Warmbull's discharge, then yes. But that's not what we have on this record. If the facts were different, if there was some statement that Ms. Hoppe said to someone else, oh, man, I wish we didn't call the police, or are you sure we really need to call the police? Well, just literally it played a role. You say it didn't motivate it, right? It did not motivate it. That's correct. It has to play a role. There are supporting roles and Mickey Mouse roles and small roles. And I know the Minnesota Supreme Court uses that language. But you're going to hold on to motivated, surely, right? Yes, motivated is the standard. But even if played a role was a standard, I still don't think Mr. Warmbull can meet that in this case. What he has is a theory. And the district court, Judge Frank, did a very good job of rooting out that theory and saying, look, these aren't reasonable factual inferences that you can make on the record. It's purely a theory with no evidence, hard or circumstantial, behind that theory, mostly for the reasons that I stated at the beginning about the 911 calls and how there's no evidence that Ms. Hoppe was unhappy that Mr. Warmbull called 911. There's also no evidence that Ms. Ely was unhappy that Mr. Warmbull called 911. And why should they be? Of course, he did what he was supposed to do in that instance, and he notified the police. Speaking of the Minnesota Supreme Court decisions, what impact, if any, does the Friedlander case have on this case? Did the district court misinterpret it, as your opponent argues in the brief that he did? Does Friedlander have any part or any role in this case? So Friedlander has no part in this case if the court affirms on either the causation prima facie element that Mr. Warmbull failed to prove or the pretext issue that Mr. Warmbull has failed to prove. If this panel finds that Judge Frank did, in fact, err on those prima facie elements of Mr. Warmbull's case, then Friedlander becomes relevant. As we've cited in our brief, Judge Frank denied Minack's arguments below that there was no protected activity here because Mr. Warmbull engaged as part of his job duties. Then you get into the Friedlander decision if the panel chooses to go that far. Thank you. So to briefly sum up, no reasonable juror could find that Mr. Warmbull's 911 call was causally linked to his termination. Minack's reasons for termination are supported by a good faith, honest belief, and they're entitled to considerable deference under this court's jurisprudence. Mr. Warmbull has not offered sufficient evidence to call into question the accuracy of this good faith belief and Minack's reasons for termination. And he's offered no evidence to even suggest that Mr. Warmbull's 911 call played any part in his termination. In fact, it was to the contrary. Minack encouraged and appreciated Mr. Warmbull's action in doing so as it was a key part of his role as a security officer. Because Mr. Warmbull failed to present evidence that he was retaliated against for calling 911, we respectfully ask that the court affirm the district court's grant of summary judgment. Thank you. Well, we thank you for your argument. You may proceed. Your Honor, your Honor, this is a pretext case. And there is, there are certain kinds of evidence that are traditionally types of evidence of pretext. And they include mendacity. And they include differential treatment of similarly situated employees. And they include departures from customary practices. This is not a direct evidence case. Counsel's argument to your honors is essentially Director Hoppe didn't come out and say that she dislikes Mr. Warmbull because he called 911. But it's not our burden to demonstrate to you that Minack has come out and admitted that they were retaliating against Mr. Warmbull. A direct evidence case, your Honor. It's a pretext case. One of the reasons that was given for suspending, investigating, and firing Mr. Warmbull was that he did not help with the active shooter situation. That is demonstrably false. And the vast weight, the vast majority of the evidence suggests that. Director Hoppe's testimony is contradicted directly by police reports where Mr. Warmbull was on the other side of campus helping police officers, meeting them, and taking them in to help with the active shooter situation. At the exact moment when he was supposedly in a stairwell with Director Hoppe. In addition to that, your honors, one of the other reasons was that he was involved in a negligent search. Counsel talked about we. There was a we. There was a we who was doing this search. Nobody else who was involved in that search was even warned, suspended, investigated, much less terminated. For those reasons, your honors, there is a genuine issue of material fact about whether Mr. Warmbull's call to 911 played a role in his termination. And summary judgment must be reversed. Thank you. We thank you for your argument. The case is now submitted and we will take it under consideration. The court will be in recess for about ten minutes or so before we hear the next two cases.